EX PARTE EMILIANO RODRÍGUEZ REYES, Petitioner.

No. 119.   Argued July 24, 1939.—Decided July 29, 1939.

*Santos P. Amadeo, Ciro Malatrasi, Jr., Antonio J. Amadeo, Noel González Reichard* and *Pascual Semidey,* for petitioner. *R. A. Gómez, Prosecuting Attorney,* for The People.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Through his counsel, Santos P. Amadeo, Emiliano Rodríguez Reyes requested the issuance of a writ of habeas corpus addressed to Andrés Lugo, Warden of the District Jail of San Juan, who held him under his custody, and prayed that once that his case had been investigated, he be exonerated of the judgment of conviction entered against him by the

Municipal Court of San Juan, on March 23, 1938, in excess of its jurisdiction.

The writ was issued and the case was heard on the twenty-fourth of July current. The prosecuting attorney agreed to the petition. The facts, as stated in the petition, were proven. They are as follows:

"1.—That on March 20, 1938, around eight o'clock A. M., petitioner was arrested by the Detective of San Juan under charges of burglary in the second degree.

"2.—That petitioner was imprisoned in the Police Headquarters of Santurce, remaining there until March 23, 1938.

"3.—That on March 23, 1938, the Detective of San Juan filed complaints in the Municipal Court of San Juan, Third Section, charging petitioner with the commission of six crimes of burglary in the second degree.

"4.—That at the very moment of the arraignment, petitioner pleaded guilty to said offenses.

"5.—That in view of the defendant's confession in open court, the Municipal Court of San Juan, immediately and on that same occassion, declared petitioner guilty of six offenses of burglary in the second degree and imposed on him a sentence of three years in jail.

"6.—That by virtue of such sentence and once that the corresponding warrant of commitment had been issued, petitioner was imprisoned in the District Jail of San Juan under the custody of Andrés A. Lugo, Warden of said jail.

"7.—That at no moment, from the time of his arrest to the period subsequent to his imprisonment, has the petitioner had the assistance of counsel for his defense, and that the Court at no time offered to appoint or appointed any counsel to petitioner, nor informed him of his right to be assisted by counsel or that in case that he was unable to engage the services of lawyer that he was entitled to have one appointed by the court.

"8.—That petitioner, at the time when he was sentenced, was 17 years of age, knew how to read and write and had no previous criminal record whatsoever."

This Court has repeatedly decided during these last months, following the decision of the Supreme Court of the United States in the case of *John A. Johnson, Petitioner* v. *Fed. C. Zerbst, Warden,* 304 U. S. 458, that:

"When an accused who appears before the court *a quo* without an attorney is not told of his constitutional right of being represented by an attorney, he puts up no defense and there is nothing to indicate that he waived his right competently and intelligently, said court no longer has jurisdiction to continue the proceedings to a conviction and sentence and if the accused is incarcerated by virtue of such a judgment he may obtain his liberty by a writ of *habeas corpus*." *Ex parte Hernández*, 54 P.R.R. 396.

The only difference between this case and those already decided by this Court is that in the latter we had to do with judgments rendered by district courts, and in the case at bar the judgments were entered against petitioner by a municipal court.

We have seen that notwithstanding this, the prosecuting attorney agreed to the petition, explaining that he did so because although the offense involved was a misdemeanor, it was such that could be easily distinguished from small offenses for which perhaps no assistance of counsel was necessary. He called the Court's attention to Section 324 of the Code of Criminal Procedure, (1935 ed.) which together with the note that follows it, reads:

"Section 324.—In all cases of conviction for felony the court sentencing any person convicted must attach to the sentence of imprisonment a provision that such imprisonment be at hard labor."

"Section 3.—Whenever a person is convicted of a misdemeanor and is sentenced to imprisonment in a district jail for a term exceeding ninety days, the court may, in its discretion, direct that he be put to labor upon public works during the term of his imprisonment."

The prosecuting attorney also referred to a recent decision which throws light on the issue to be decided. We refer to the one rendered by the United States Court of Appeals for the District of Columbia in the case of *Sanders* v. *Allen, et al.*, 100 F. (2d) 717.

Said case was tried before Chief Justice Grover and Associate Justices Miller and Vinson and the opinion was ren-

dered *per curiam*. In that part which we consider pertinent it reads as follows:

"This is an appeal from an order denying appellant's application for a writ of habeas corpus. Sometime in July, 1938 appellant (petitioner) and a friend were arrested for being drunk on the street near a public restaurant. Petitioner was tried in the Police Court and fined $100, in default of which she was committed to the city jail until the fine should be paid or—in lieu thereof—for 60 days. After a few days detention, she was transferred to the District workhouse at Occoquan, some 20 miles distant from the City of Washington, where she was at the time of her application.

"Her petition alleges that when arrested and tried she was not drunk but instead was suffering from the effects of a drug which had been administered to her without her knowledge, and that at neither time was she mentally able to understand the nature of the charge against her or to make her defense. She contends that on her trial she was entitled of right, under the provisions of the Fifth and Sixth Amendments of the Constitution, U.S. C.A. Const. Amends. 5, 6, to be represented by counsel, and that she was not informed of this right and did not waive it."

"  *        *        *        *        *        *        *

"The general rule established by a long line of decisions beginning with *Ex parte Carll*, 106 U.S. 521, 1 S.Ct. 535, 27 L. Ed. 288, is that power to review a conviction for crime by issuing a writ of habeas corpus is confined to the determination of the court's jurisdiction to try the petitioner for the offense and to sentence him to imprisonment. In the recent case of *Johnson* v. *Zerbst*, 304 U. S. 458, 465, 58 S. Ct. 1019, 82 L. ed. 1461, however, the Supreme Court said that the rule must be construed and applied so as to preserve—not destroy—constitutional safeguards of human life and liberty. The Court held this extension of the rule to include examination of facts outside of but not inconsistent with the record and the duty upon determination of the facts 'to dispose of the party as law and justice require' (page 1024). Turning to the record, we find the allegation that petitioner was at the time of her trial mentally incapable of understanding the nature of the charge against her or of defending herself. She says that at the time of her arrest and trial she was wholly under the influence of a drug administered to her without her knowledge and consent and that, in consequence, she did not know what was going on in the court room when she was tried and convicted, and that this condition of mental incompetency continued until after the

expiration of the five days in which she was entitled to apply for review. If this allegation is true, law and justice require that the conviction should be set aside and that she should be discharged. Following, therefore, the rule announced in *Johnson* v. *Zerbst*, we think it proper to remand the case to the District Court with instructions to issue the writ and hear the evidence and determine on the hearing whether it is true or untrue that petitioner was at the time of the arrest and trial so mentally distraught as to be unable to understand the nature of the proceeding against her and to make her defense. But the inquiry, we think, should be confined to that single subject.

The trial and conviction of a person mentally and physically incapable of making a defense violates certain inmutable principles of justice which inhere in the very idea of free government. *Powell* v. *Alabama*, 287 U. S. 45, 71, 53 S. Ct. 55, 78 L. ed. 158, 84 A.L.R. 527. Such is the case presented by the record. If the facts are in line with the allegations, then the petitioner is entitled to release on this ground alone. If, on the contrary, the allegations in the respects mentioned are untrue, the writ should be dismissed. There 's therefore no occasion to construe the Sixth Amendment in its relation to a trial in a municipal court for violation of a municipal ordinance.

"The petition should be dismissed as to the Attorney General and as to the Director of the Bureau of Prisons, but allowed as to the other respondents."

In accordance with the law, the fourth term of sessions of this Court for this year expires today, and the fifth does not begin until the first Monday of November next, and as the decision of this case does not admit of any delay, we shall not be able to consider in our opinion, as we would like to, the question propounded by the prosecuting attorney in relation to the different degrees of seriousness in misdemeanor offenses. Also as to the courts. We shall limit ourselves then, to use the decision above quoted as a guide—*Sanders* v. *Allen, et al., supra*—deciding the case in accordance with its peculiar circumstaces and to call the attention of courts, in order to prevent difficulties, to the strictest compliance with their duties in regard to acknowledging the constitutional right here involved. Such attitude on their part will not injure the administration of justice but will contribute

on the contrary, to settle the spirit of our institutions into practice. See *Ex parte Oropesa Rolón*, decided on the fourteenth of this month, (*ante* p. 274.)

We are familiar with the facts. They acquire a greater significance by quoting what was said by petitioner in answer to questions asked in the course of the trial. It reads:

"Chief Justice: (To petitioner) Do you have anything to tell to the Court now that you are here?

"Petitioner: What I wanted to say is that the court at no time offered me counsel for my defense. And also that when the court sentenced me, I was ignorant, I didn't know what guilt or innocence meant.

"Q.—How old are you?

"A.—Up to now I am 18 years old.

"Q.—Were you imprisoned at the time when you were taken to court, when you entered a plea of guilt?

"A.—I was in Headquarters.

"Q.—You were in Headquarters?

"A.—Yes, sir.

"Q.—The Police put you in pr'son and took you to court?

"A.—To Headquarters.

"Q.—Who took you to court?

"A.—The Detective took me to court.

"Q.—The Detective? Were you at liberty after you had been accused? Did anyone give bond for you?

"A.—No, s'r.

"Q.—So that you were imprisoned, taken to court and you pleaded guilty?

"A.—Yes, s'r.

"Q.—Under those conditions?

"A.—I was first taken to Headquarters and I was impr'soned three days in Headquarters.

"Q.—Three days?

"A.—Three days, and then I was taken from Headquarters to court, where the judge adjudged me guilty and at the same time sentenced me to three years in jail."

We are considering then, a case where a person approximately seventeen years of age, and who apparently has not had the benefit of an education that may enable him

to exercise his own rights, is held for three days in the police headquarters pending the investigation of an offense or offenses of burglary at the end of which he is taken by the Police to a municipal court where immediately and without having been informed as to his right to be assisted by counsel, he pleads guilty of the various offenses charged, the court immediately entering judgments of conviction sentencing him to three years in jail, he then passing from the court to jail to comply with said judgments.

For that person, the Constitution, the Organic Act, the Code of Criminal Procedure and the decisions of courts in this matter, were dead letter. A judgment thus rendered cannot be upheld.

After having brought forth the truth of what happened in accordance with the law and the jurisprudence and in view of the peculiar circumstances of the case, the immediate discharge of petitioner must be ordered, without prejudice to any other legal action which the People of Puerto Rico may file against him.

Mr. Justice Travieso took no part in the decision of this case.